UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

NICOLE LAWTONE-BOWLES,

        Plaintiff,

-against-

STEVEN J. BAUM; RIYAZ G. BHIMANI; EXKERT SEAMANS CHERIN & MELLOT, LLC; U.S. BANK NATIONAL ASSOCIATION, as Trustee, as Successor-in-Interest to Bank of America National Association; SELECT PORTFOLIO SERVICING; U.S. BANK NATIONAL ASSOCIATION, as Trustee, as Successor by Merger to Lasalle Bank National Association, JUDGE SANDRA B. SCORITINO,

        Defendants.

25-CV-1218 (LLS)

ORDER OF DISMISSAL
WITH LEAVE TO REPLEAD

---

LOUIS L. STANTON, United States District Judge:

    Plaintiff, who is appearing *pro se* and *in forma pauperis*, brings this action under the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq*., the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601-2617, the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.,* the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq*., and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968. She asserts claims for alleged fraudulent mortgage servicing and foreclosure practices, misappropriation of funds, and wrongful foreclosure attempts. For the reasons set forth below, the Court dismisses this action, with 30 days' leave to replead.

## STANDARD OF REVIEW

    The Court must dismiss an *in forma pauperis* complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B);

*see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction of the claims raised. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original). But the "special solicitude" in *pro se* cases, *id*. at 475 (citation omitted), has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

## BACKGROUND

The following facts are drawn from the complaint.[1] Plaintiff alleges that her claims arose in Highland Falls, New York, Orange County, from 2004 to 2025. (ECF 1 at 5.) In 2004, Plaintiff allegedly paid $81,000 from a Workers' Compensation check to attorney Steven J. Baum to satisfy her mortgage, but the payment was not applied, and the mortgage was not marked as satisfied. (*Id.* at 7.) Despite the loan allegedly having being paid in full, Defendants continued to bill Plaintiff, and she continued making payments on the loan to Select Portfolio Servicing (SPS). Eventually, Plaintiff discovered that attorney Baum "had misappropriated her funds and had been cited for fraud." (*Id.*)

---

[1] The Court quotes from the complaint verbatim. All spelling, grammar, and punctuation are as in the original unless noted otherwise.

For 14 years, one or more Defendants have attempted to foreclose on her home, despite allegedly knowing "that the underlying mortgage debt was fraudulent." (*Id.*) In 2025, Judge Sandra B. Scoritino upheld a "fraudulent foreclosure," notwithstanding Plaintiff's "evidence of fraud" and "the fact that Plaintiff had filed complaints against the judge for bias based on [Plaintiff's] race (Black) and disability." (*Id.*)

Plaintiff brings suit against mortgage servicer SPS; U.S. Bank, N.A., acting as successor-in-interest to Bank of America, N.A., and LaSalle Bank, N.A.; lawyers Steven J. Baum of Florida, and Riyaz G. Bhimani of New York, and the latter's law firm, Eckert Seamans Cherin & Mellott, LLC. Plaintiff asserts claims for violations of RESPA, TILA, FDCPA, FCRA, and the RICO Act. She seeks damages, a court order declaring the mortgage fully satisfied and voiding further foreclosure actions, restitution for improper payments made to SPS, and expungement of negative credit reporting related to the foreclosure.[2] (*Id.* at 9.)

Plaintiff has also submitted an application styled as a motion for summary judgment (ECF 14), an application styled as an Answer to her complaint (ECF 16), and exhibits. (ECF 17.) The exhibits include what appears to be (1) an assignment of mortgage dated June 29, 2001, "within the secondary mortgage market," from Alliance Funding to U.S. Bank, N.A. as trustee, "in care of Select Portfolio Servicing, Inc." (ECF 16-1 at 2-3); and (2) a letter from Attorney Steven Baum dated September 7, 2004, which states that "a claim in the amount of $70,479.13 calculated through today has been referred to us for appropriate action, such as a mortgage foreclosure proceeding." (ECF 16-2 at 2.) Plaintiff, who has ECF filing privileges, titled the document as follows: "Baum Gave Me This Paid Receipt When I Signed Over My Workers

---

[2] Plaintiff's prior suit against SPS, Baum, and U.S. Bank was dismissed without prejudice for failure to prosecute. *Lawtone-Bowles v. U.S. Bank, N.A.*, No. 7:19-CV-5786 (PMH) (S.D.N.Y. Jan. 19, 2021) (ECF 31).

3

Compensation Check Of $81,000.00 To Pay Off My Home Mortgage Of $70,600.00 But Apparently [He] Did Not Pay Off My Mortgage And Stole My Money." (ECF 16-2.)

Plaintiff contends that the assignment to U.S. Bank, N.A, was fraudulent because, among other reasons, it was "executed before mortgage was recorded" by a "failed lender" and "[t]ransferred into a trust that didn't exist." (ECF 16-1 at 9.) As a result, U.S. Bank, N.A. allegedly "lacked enforceable legal rights to foreclose." (*Id.*) Moreover, she contends that the loan "[a]ccelerated on February 1, 2009," and the limitations period for the state foreclosure action expired on February 1, 2015. (*Id.* at 10.)

## DISCUSSION

### A.   TILA

Congress enacted the TILA "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit . . . ." 15 U.S.C. § 1601(a). For example, TILA requires "lenders to disclose to consumers certain material terms clearly and conspicuously in writing, in a form that consumers may examine and retain for reference." *Cardiello v. The Money Store, Inc.*, No. 00-CV-7332 (NRB), 2001 WL 604007, at *3 (S.D.N.Y. June 1, 2001), *aff'd*, 29 F. App'x 780 (2d Cir. Mar. 15, 2002).

Actions for damages under the TILA must be brought "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). For actions under Sections 1639, 1639b, and 1639c, the period is three years. *Id.* For closed-ended transactions like mortgages, the "date of the occurrence of the violation" is the date that the plaintiff enters into the loan agreement. *See Ledgerwood v. Ocwen Servicing LLC*, No. 15-CV-1944, 2015 WL 7455505 (E.D.N.Y. Nov. 21, 2015).

Here, the only Defendant that conceivably qualifies as a lender for purposes of TILA is Defendant U.S. Bank, N.A., acting as successor-in-interest to Bank of America, N.A., and LaSalle Bank, N.A. Plaintiff does not allege facts about when she entered into the mortgage loan for the Highland Falls property, although she does allege that she paid off the loan in 2004. (ECF 1 at 7.) Plaintiff has not identified any deficiencies in the disclosure of loan terms that violated the TILA. Plaintiff's complaint offers a legal conclusion that Defendants violated the TILA, without providing any factual support or detail about what occurred and how this violated the TILA. Plaintiff's allegations thus fail to state a claim under the TILA on which relief can be granted.

Moreover, the facts alleged in the complaint suggest that any TILA claim is time-barred. Because the failure to file an action within the limitations period is an affirmative defense, a plaintiff is generally not required to plead that the case is timely filed. *See Abbas v. Dixon*, 480 F.3d 636, 640 (2d Cir. 2007). Dismissal is appropriate, however, where the existence of an affirmative defense, such as the statute of limitations, is plain from the face of the pleading. *See Walters v. Indus. and Commercial Bank of China, Ltd.*, 651 F.3d 280, 293 (2d Cir. 2011) ("[D]istrict courts may dismiss an action *sua sponte* on limitations grounds in certain circumstances where the facts supporting the statute of limitations defense are set forth in the papers plaintiff himself submitted.") (internal quotation marks and citation omitted); see also Abbas, 480 F.3d at 640 (concluding that district court should grant notice and opportunity to be heard before dismissing complaint *sua sponte* on statute of limitations grounds).

Plaintiff's statement that she paid off her mortgage loan in 2004, makes clear that the loan issued more than 20 years ago. Whatever disclosures were or were not made to Plaintiff at the time that she entered into the loan agreement, the one- and three-year limitations periods for

bringing TILA claims have long since expired. Thus, in addition to the fact that Plaintiff has not alleged how her rights under the TILA were violated, the facts alleged suggest that any TILA claims are time-barred. The Court therefore dismisses Plaintiff's claims under the TILA for failure to state a claim on which relief can be granted.

As set forth below, the Court grants Plaintiff leave to replead. If Plaintiff repleads this claim, she must identify who is the Defendant for her TILA claim, what that Defendant did or failed to do that violated TILA, and any facts establishing tolling of the limitations period.

**B.     RESPA**

RESPA is a consumer protection statute that regulates the real estate settlement process and "provides a framework for borrowers to remedy errors relating to the servicing of their mortgage loans."[3] *Naimoli v. Ocwen Loan Servicing, LLC*, 22 F.4th 376, 379 (2d Cir. 2022).

RESPA imposes duties upon a loan servicer who receives a Qualified Written Request ("QWR") from a mortgagee. *See Roth v. CitiMortgage, Inc.,* 756 F. 3d 178, 181 (2d Cir. 2014). A QWR is defined as correspondence that identifies a borrower's account and "includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." *Id.* (citing 12 U.S.C. § 2605(e)(1)(B)(ii)). A QWR must be sent to an address designated by the loan servicer for the receipt of QWRs to be considered effective. *See Mack v. ResCorp. Borrower Claims Trust*, 678 Fed. Appx. 10, 14-15 (2d Cir. 2017); *Roth*, 756 F.3d at 181 ("[I]f a servicer establishes a designated QWR address, then the borrower must deliver its request to that office in order for the inquiry to be a 'qualified written request.'").

---

[3] Servicing is "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan . . . and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower." 12 U.S.C. § 2605(i) (3).

When evaluating claims that a defendant has violated RESPA, courts have distinguished between a servicer's handling of loan servicing inquiries, which are covered, and its handling of requests for other information, including loan modifications, which may not be. *See, e.g., Ehrenfeld v. Wells Fargo, N.A.*, No. 19-CV-2314 (BMC), 2019 WL 4933631, at *3 (E.D.N.Y. Oct. 7, 2019) ("RESPA (through Regulation X) regulates many aspects of loss mitigation practices, but does not regulate the correctness of a loss mitigation decision . . . .").

Here, SPS appears to have been Plaintiff's loan servicer, and the Court therefore assumes that Plaintiff's RESPA claims are asserted against SPS. Plaintiff alleges that SPS "sent false mortgage bills to Plaintiff for years after her loan was paid off." (ECF 1 at 7.) She states that she "continued making payments until discovering the fraudulent activity" and "paid money she did not owe." (*Id.*) Plaintiff does not allege that she notified SPS of the alleged error by sending a QWR to the proper address. Plaintiff's allegations are therefore insufficient to state a claim that Defendant SPS violated the RESPA, and the Court dismisses this claim, with 30 days' leave to replead.

**C.    FDCPA**

Plaintiff has not identified which defendants allegedly violated her rights under the FDCPA. The FDCPA defines a debt collector governed by the Act as one "who regularly collects . . . debts owed or due . . . another," or as a person involved "in any business the principal purpose of which is the collection of any debts." 15 U.S.C. § 1692a(6). In contrast, a creditor is a person "who offers or extends credit creating a debt or to whom a debt is owed," excluding anyone who "receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another." 15 U.S.C. § 1692a(4). Because the FDCPA does not apply to creditors attempting to collect debts that they are owed, a noteholder and foreclosing plaintiff is not a debt collector subject to the FDCPA. *Maguire v. Citicorp Retail*

7

*Services, Inc.*, 147 F. 3d 232, 235 (2d Cir. 1998). Further, mortgage loan servicers that acquire servicing rights before a mortgage goes into default are not debt collectors. *See Alibrandi v. Fin. Outsourcing Servs., Inc.*, 333 F. 3d 82, 83-84 (2d Cir. 2003); *Zirogiannis v. Seterus, Inc.*, 221 F. Supp. 3d 292, 302 (E.D.N.Y. 2016), *aff'd*, 707 Fed. Appx. 724 (2d Cir. 2017).

Here, Plaintiff alleges that lawyers Baum and Bhimani, and the law firm Eckert Seamans Cherin & Mellott, LLC, were involved with his foreclosure proceedings, and the Court therefore understands Plaintiff to be bringing her FDCPA claims against them. She may also be bringing FDCPA claims against SPS. *See Prem Nath v. Select Portfolio Servicing, Inc.*, No. 17-806 (2d Cir. July 24, 2018) (noting, without agreeing, that plaintiff argued that "SPS was a registered debt collector and [that] courts have found foreclosure lawyers to be debt collectors.").

The Second Circuit has held that "a foreclosure action is an 'attempt to collect a debt' as defined by the FDCPA." *Cohen v. Rosicki, Rosicki & Assocs., P.C.*, 897 F.3d 75, 82 (2d Cir. 2018). Moreover, debt collectors can be subject to FDCPA liability based on actions taken in legal proceedings." *Id.* at 83-84; *Gabriele v. Am. Home Mortg. Servicing, Inc.*, 503 F. App'x 89, 95 (2d Cir. 2012) ("[S]tatements made and actions taken in furtherance of a legal action are not in and of themselves, exempt from liability under the FDCPA.").

The FDCPA prohibits, among other things, (1) harassing, oppressive, or abusive collection practices, 15 U.S.C. § 1692d, and (2) deceptive and misleading practices by a debt collector, 15 U.S.C. § 1692e. Plaintiff's allegations do not state a claim for a violation of Section 1692d. "The filing of a lawsuit to collect a debt—even if the lawsuit is meritless—is not properly understood as 'conduct the natural consequence of which is to harass, oppress, or abuse any person' under this provision. 15 U.S.C. § 1692d." *Finch v. Slochowsky & Slochowsky, LLP*, No. 19-CV-6273 (RPK), 2020 WL 5848616, at *3 (E.D.N.Y. Sept. 30, 2020); *Okyere v. Palisades*

*Collection, LLC*, 961 F. Supp. 2d 508, 520 (S.D.N.Y. 2013) (holding that filing a lawsuit does not represent the "extrajudicial techniques of harassment designed to humiliate or annoy a debtor" that Section1692d was designed to protect against); *Derisme v. Hunt Leibert Jacobson P.C.*, 880 F. Supp. 2d 311, 328 (D. Conn. 2012) ("Prosecuting a state foreclosure action is simply not the type of abusive collective practices that the FDCPA is aimed at eliminating."). District courts have reasoned that "[w]hile the FDCPA was designed to protect unsophisticated consumers from unscrupulous debt collectors, that purpose is not implicated when a mortgagee is instead protected by the court system." *Id.* at 329.

Plaintiff can be understood as asserting a claim for deceptive practices under Section 1692e. She alleges that Defendants knew that her mortgage had been paid off but falsely represented that she owed this debt. Section 1692e prohibits a false representation of the character, amount, or legal status of any debt, 15 U.S.C. § 1692e(2)(A), and the Second Circuit has interpreted Section 1692e as proscribing "even a partial misstatement of a consumer's debt obligation." *Vangorden v. Second Round, L.P.*, 897 F.3d 433, 442 (2d Cir. 2018) (discussing plaintiff's claims under Sections 1692e and 1692f). However, "statements must be materially false or misleading to be actionable under the FDCPA." *Cohen v. Rosicki, Rosicki & Assocs., P.C.*, 897 F.3d 75, 85 (2d Cir. 2018).

Plaintiff alleges that in 2025, Judge Sandra B. Scoritino of the Supreme Court of the State of New York rejected Plaintiff's "evidence of fraud" and upheld a "fraudulent foreclosure." (ECF 1 at 7.) A "federal court must give a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *O'Connor v. Pierson*, 568 F.3d 64, 69 (2d Cir. 2009) (cleaned up). Under New York law, the doctrine of issue preclusion (or collateral estoppel) "bars a party from relitigating in a subsequent

9

proceeding an issue clearly raised in a prior proceeding and decided against that party where the party to be precluded had a full and fair opportunity to contest the prior determination." *Weiss v. Manfredi*, 83 N.Y.2d 974, 976 (1994).

Two requirements must be satisfied for issue preclusion to apply: (1) there must be an "identity of issue which has necessarily been decided in the prior action and is decisive of the present action," and (2) plaintiff must have had "a full and fair opportunity to contest the decision now said to be controlling." *Schwartz v. Pub. Adm'r*, 24 N.Y.2d 65, 71 (1969). Issue preclusion "'bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim.'" *Marcel Fashions Grp., Inc. v. Lucky Brand Dungarees, Inc.*, 779 F.3d 102, 108 (2d Cir. 2015) (citation omitted, emphasis in original).[4]

Plaintiff alleges that Defendant Baum "[t]ook $81,000 from Plaintiff" but failed to apply it to satisfy her mortgage. (ECF 1 at 7.) Plaintiff alleges that she raised "evidence of fraud" in the state court, but Judge Scoritino upheld the "fraudulent foreclosure." (*Id.*) The issue of whether Baum engaged in such fraud thus was actually litigated in the state court, and a determination adverse to Plaintiff was essential to a judgment of foreclosure. Although Plaintiff asserts, without factual development, that the state court judge was biased against her, nothing in the complaint suggests that Plaintiff did not have an opportunity to contest the issue of Baum's alleged fraud. The Court therefore concludes that issue preclusion bars Plaintiff from relitigating whether Plaintiff's mortgage loan debt was legally owed in the context of her FDCPA claim. The Court

---

[4] A court may raise the question of issue preclusion on its own initiative. *See Curry v. City of Syracuse*, 316 F.3d 324, 331 (2d Cir. 2003) (" [W]e have previously upheld a district court' s dismissal of a case on collateral estoppel grounds even where collateral estoppel was not raised as an affirmative defense in the answer, but was raised by the district court *sua sponte,* without permitting the party against which it was asserted an opportunity to argue the issue." ).

10

therefore dismisses Plaintiff's FDCPA claim for failure to state a claim on which relief can be granted.

If Plaintiff wishes to replead this claim, she must allege facts in the amended complaint showing that she lacked a full and fair opportunity to litigate in the context of her foreclosure proceedings whether the mortgage loan debt was legally owed.

**D.    FCRA**

Plaintiff alleges that U.S. Bank, N.A. (as Trustee) harmed her by subjecting her to years of wrongful foreclosure attempts, and she ultimately "suffered credit damage, and faced financial harm." (ECF 1 at 8.) Plaintiff alleges that the "credit damage, affect[ed] her ability to obtain loans or secure housing." (*Id.*) She seeks "[e]xpungement of negative credit reporting related to the fraudulent foreclosure attempts." (*Id.* at 9.)

As an initial matter, the Supreme Court has held that "[t]he mere presence of an inaccuracy in an internal credit file, if it is not disclosed to a third party, causes no concrete harm." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2210 (2021) (concluding that plaintiffs whose credit files were not disseminated to third parties lacked standing to sue for violations of the FCRA). Plaintiff's allegation that she suffered "credit damage affecting her ability to obtain loans or secure housing" (ECF 1 at 8) is ambiguous. It is unclear if she actually sought credit from a third party, and suffered an adverse impact based on her credit score, or if she merely alleges that her damaged credit will inevitably have some effect on her future ability to do so. Plaintiff thus fails to meet her burden of demonstrating that she has standing to sue for a violation of the FCRA.

The FCRA imposes two main duties on furnishers of information: (1) a duty to provide accurate information, 15 U.S.C. § 1681s-2(a); and (2) a duty to investigate after receiving a notice of dispute, 15 U.S.C. § 1681s-2(b). Violations of the duty to provide accurate information, Section

11

1681s–2(a), are enforced by certain government officials – not consumers themselves. *Longman v. Wachovia Bank, N.A.*, 702 F.3d 148, 151 (2d Cir. 2012) ("[T]here is no private cause of action for violations of § 1681s-2(a)."); *Comunale v. Home Depot, U.S.A., Inc.*, 328 F. Supp. 3d 70, 79 (W.D.N.Y. 2018) ("There is no private cause of action under Section 1681s-2(a), for the FCRA limits the enforcement of this subsection to government agencies and officials."); 15 U.S.C. § 1681s-2(d) (stating that subsection (a) of the FCRA "shall be enforced exclusively . . . by the Federal agencies and officials and the State officials identified in section 1681s of this title"). Plaintiff thus cannot sue U.S. Bank, N.A., for allegedly furnishing false information to a consumer reporting agency.

By contrast, an individual can sue a furnisher of information for violations of the duty to investigate. *See Comunale*, 328 F. Supp. 3d at 80 (holding that the FCRA "does provide for a private cause of action pursuant to § 1681s-2(b)"). The investigation duties under Section 1681s-2(b) arise only after the furnisher of financial information receives notice of the consumer's dispute from the CRA. "To state a claim [under § 1681s-2(b)(1)], a consumer must show that (1) a furnisher received notice of a credit dispute from a [CRA] (as opposed to from the consumer alone) and (2) the furnisher negligently or willfully failed to conduct a reasonable investigation." *Jackling v. HSBC Bank USA, N.A.*, No. 15-CV-6148 (FPG), 2019 WL 162743, at *4 (W.D.N.Y. Jan. 10, 2019). Here, Plaintiff makes no allegation that she contacted the CRA in connection with the information that Defendants furnished or that she requested an investigation. Even if Plaintiff had alleged facts sufficient to show standing to sue, the allegations of the complaint do not state a claim on which relief can be granted under the FCRA, and this claim is therefore dismissed.

**E.     RICO**

The RICO Act makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). To establish a claim for a civil violation of Section 1962(c), "a plaintiff must show that he was injured by defendants' (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Azrielli v. Cohen Law Offices*, 21 F.3d 512, 520 (2d Cir. 1994). RICO defines "racketeering activity" to include numerous criminal offenses, which are in turn defined by federal and state law.[5] *See* 18 U.S.C. § 1961(1).

The RICO conspiracy provision, Section 1962(d), makes it "unlawful for any person to conspire to violate any of the provisions of" 18 U.S.C. § 1962(a), (b), or (c). *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 244 (2d Cir. 1999). To establish a RICO conspiracy claim, a plaintiff must allege facts showing that the defendants "agreed to form and associate themselves with a RICO enterprise and that they agreed to commit two predicate acts in furtherance of a pattern of racketeering activity in connection with the enterprise." *Id.* at 244.

Plaintiff alleges that Defendants engaged in a pattern of fraudulent conduct spanning 21 years, from 2004 until the judgment of foreclosure was entered in 2025. (ECF 1 at 9.) She seeks treble damages under RICO. (*Id.*) Plaintiff has not identified the racketeering activity that forms the basis for her claims. Insofar as Plaintiff's RICO allegations are based on her assertion that she had paid off her mortgage loan but Defendant Baum fraudulently failed to apply the payment, as explained above, this issue has already been resolved against her in the state court

---

[5] Common-law fraud does not constitute racketeering activity for RICO purposes. *See* 18 U.S.C. § 1961(1).

foreclosure proceedings. Issue preclusion therefore bars Plaintiff from relitigating the issue. In addition, there are no facts in the complaint suggesting a meeting of the minds or agreement between Defendants to engage in two predicate acts in furtherance of a pattern of racketeering. Although Plaintiff alleges that defendants "actively participated" in what she describes as a "fraudulent foreclosure," she does not allege facts suggesting an agreement to commit "racketeering activity" or include factual assertions about communications, express agreements, meetings, or coordinated planning among Defendants. The Court therefore dismisses Plaintiff's civil RICO Act claims for failure to state a claim on which relief can be granted.

## LEAVE TO AMEND

Plaintiff proceeds in this matter without the benefit of an attorney. District courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects, unless amendment would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Because Plaintiff may be able to allege additional facts to state a valid claim, the Court grants Plaintiff 30 days' leave to amend her complaint to detail her claims. If Plaintiff chooses to file an amended complaint, she should address any basis for tolling of limitations periods and whether there is any reason that the state court foreclosure proceeding did not provide a full and fair opportunity to litigate the issue of whether Plaintiff's mortgage had been paid off.

If Plaintiff does not file an amended complaint within the time allowed, the Court will direct the Clerk of Court to enter judgment in this action, dismissing the federal claims for failure to state a claim on which relief can be granted, 28 U.S.C. § 1915(a)(1), and declining supplemental jurisdiction of any state law claims, 28 U.S.C. § 1367(c)(3).

## CONCLUSION

Plaintiff's complaint, filed *in forma pauperis* under 28 U.S.C. § 1915(a)(1), is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), with 30 days' leave to replead.

The Court directs the Clerk of Court to hold this matter open on the docket until a civil judgment is entered.

SO ORDERED.

Dated:   August 6, 2025
         New York, New York

                                                    _____
                                                    Louis L. Stanton
                                                    U.S.D.J.